IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN MICHAEL SPAUR,

      Petitioner,

v.                                                        Civil Action No. 2:11cv090
                                                       Criminal Action No. 2:09cr09

UNITED STATES OF AMERICA,                (JUDGE BAILEY)

      Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On November 2, 2011, John Spaur, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Dkt. No. 97). The government filed its response on September 7, 2012. (Dkt. No. 138). The government also filed a motion to dismiss on September 7, 2012. Dkt. No. 140. The petitioner filed a response in opposition to the government's motion to dismiss on September 24, 2012. (Dkt. No. 141 at 1).

The undersigned now issues this Report and Recommendation on the petitioner's § 2255 motion and the government's motion to dismiss without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge dismiss the petitioner's § 2255 motion.

### II. Facts

*A. Conviction and Sentence*

The petitioner was named in a ten-count indictment issued by a grand jury sitting in the Northern District of West Virginia on April 15, 2010. Counts One and Two charged that the

1

petitioner possessed equipment and chemicals to manufacture methamphetamine in violation of 21 U.S.C. §§ 843(a)(6) and 843(D)(2). Counts, Three, Four, Five, Six, Seven, Eight, Nine and Ten charged the petitioner with possession of pseudoephedrine to be used in the Manufacture of methamphetamine in violation of 21 U.S.C. § 841(c)(2).

On October 1, 2010, the petitioner entered into a plea agreement by which he agreed to plead guilty to Count Three of the indictment which charged him with possessing equipment and chemicals to manufacture methamphetamine. In the plea agreement the petitioner waived his right to an appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> Part E: Waiver of Appellate Rights:
>
> 12.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives his right to appeal any sentence which is consistent with Guideline range twenty-three (23) or lower, or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence. However, in the event that there would be an appeal by the United States, the defendant's waiver contained is this paragraph will be voided provided he timely files a notice of appeal under the Rules of Appellate Procedure.

(Plea Agreement, Dkt. No. 69 at 4).

On October 1, 2010, the petitioner entered his plea in open court. The petitioner was sworn and testified that he was forty-nine years old; could read and write English; had attended two years of college; was not taking any medication; had not consumed any alcohol within the previous 24

hours; and understood that the oath he had taken meant he must tell the truth He acknowledged that he had been treated at a hospital and Judge Bailey had found him fit to proceed to trial.[1] (Plea transcript, Dckt. 121, at 4, 10-11). The petitioner answered "yes" when asked if he understood that he should feel free to ask the Court for an explanation of its questions or talk to his counsel at any time. (Id. at 3-4). The Assistant United States Attorney ("AUSA") summarized the plea agreement aloud in open court and specifically stated that Part E waived the petitioner's appellate and collateral attack rights. (Id. at 10).

The Court specifically asked petitioner if he understood the waiver of his appellate and collateral attack rights and petitioner said, "yes." (Id. at 22-23. The Court also asked the petitioner's counsel if he believed the Court had covered all Rule 11 matters, and the petitioner's counsel said he did. (Id. at 32). During the plea hearing, the government presented the testimony of Deputy First Class Theron Caynor to establish a factual basis for the plea. (Id. at 34-40). The petitioner did not contest the factual basis of the plea. (Id. at 40).

Before the government presented the factual basis of the plea, the petitioner advised the Court

---

[1]After his indictment, the petitioner underwent several rounds of psychiatric and psychological evaluations. Pursuant to an agreement, the petitioner was seen and evaluated by a forensic psychiatrist and neurologist on May 29, 2009. (Dckt. 20 at 1). After receiving a notice of insanity defense, the Court ordered the petitioner committed to the custody of the Attorney General for the purpose of conducting a psychiatric and psychological evaluation. (Dckt. No. 33 at 3-4). Based on the results of that report, the Court found the petitioner incompetent to stand trial and committed him to the custody of the Attorney General for a reasonable period, not to exceed four months to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the proceedings to go forward. (Dckt. No. 43 at 3). On June 30, 2010, the Court received a Certificate of Restoration of Competency to Stand Trial which indicated that the petitioner was able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. (Dckt. No. 47). On August 24, 2010, the Court found the petitioner competent to stand trial. (Dckt. No. 56 at 3).

3

that he was guilty of Count 3 of the indictment. (Id. at 32). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 26). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 25). The petitioner testified that he was completely satisfied with his attorney's representation. (Id. at 23). Finally, the petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 27).

At the conclusion of the hearing, the Court determined that the petitioner was fully competent and capable of entering an informed plea, the petitioner knowingly and voluntarily consented to having a Magistrate Judge conduct his hearing and accept his plea, the petitioner understood the consequences of pleading guilty, the plea was made freely and voluntarily, and the essential elements of the crime were independently supported. (Id. at 40-41). The petitioner did not object to the Court's finding.

On February 8, 2011, the petitioner appeared before the Court for sentencing. (Dkt. No. 124 at 1). The Court considered all § 3553 factors, including the defendant's mental health issues. (Id. at 24). The petitioner was sentenced to 84 months imprisonment, a period below his recommended Guideline range and in line with the terms of the plea agreement. (Id. at 21).

***B. Direct Appeal***

The petitioner did not file a direct appeal of his conviction and sentence.

***C. Federal Habeas Corpus***

Petitioner's Contentions

The petitioner alleges ineffective assistance of counsel for the following reasons:

(1) Failing to file a written motion for a Guideline downward departure based on diminished

4

capacity,

(2) failing to file a written objection to the presentence report's recommendation of an upward adjustment based on creating a substantial risk of harm to human life and the environment,

(3) failing to provide or discuss a psychological report, discovery material, and the government's trial witness list,

(4) failing to discuss the presentence report, and

(5) promising a specific sentence of probation.

The petitioner further alleges the following:

(6) fraudulently billing for legal services provided due to the facts alleged in grounds 1-5.

Government's Response

In support of its motion to dismiss, the respondent argues the following:

(1) The preparation for and delivery of a diminished capacity defense by the petitioner's counsel was objectively reasonable,

(2) no good argument could be made against the adjustment in light of facts of the presentence report,

(3) the petitioner's own testimony and records of his interaction with his counsel contradict his claim,

(4) the Court's findings refute the petitioner's claim,

(5) the petitioner's testimony and his counsel's affidavit do not provide clear and convincing evidence to substantiate his claim, and

(6) the record of counsel's actions is inconsistent with the petitioner's claim.

*E. Recommendation*

Based upon a review of the record, the undersigned recommends that the petitioner's § 2255 motion be denied and dismissed from the docket because the petitioner expressly waived his right to file a § 2255 collateral attack, and any ineffective assistance of counsel claims that fall outside the waiver lack merit.

### III. Standard of Review

*A. Petitioner's Burden of Proof*

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorize by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Sutton v. United States of* America, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006);. *United States*, 30 F.Supp.2d 883, 889 (E.D.Va. 1998). The Court may decide a § 2255 Motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988); *Zhan Gao v. United States*, 375 F.Supp.2d 456, 459 n.1 (E.D.Va. 2005).

*B. § 2255 Standard*

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or

6

the court in imposing sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. *United States v. Lemaster v.*, 403 F.3d 216, 221 (2005)(citations omitted).28 U.S.C. § 2255. Because a 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on direct appeal of that judgment may not be raised again in a § 2255 motion. *United States v.* Harrison, No. 96- 7579, 1997 WL 499671, at *1 ( 4th Cir. August 25, 1997) (unpublished).

Nonetheless**,** a 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Non-constitutional claims that **could** have been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477, n.10, (1976)(citing *Davis v. United States*, 417 U.S. 333, 345-46 and n.15 (1974); *Sunal v. Large*, 332 U.S. 174, 178-79 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009)("A petitioner who waives the right to appeal is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that **could have** been raised on appeal.")(Quoting Brian R. Means *Fed. Habeas Practitioner Guide*, Jurisdiction ¶ 1.23.0)(2006-2007) (emphasis in the original) (internal citations omitted). Non-constitutional claims that **could have** been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. 477 n. 10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmereck*, 441 U.S. 780, 784 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal, may not be raised for the first time in a 2255 motion, unless the movant can show either (1) "cause" that

7

excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain a collateral attack *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Bousley v. United States,* 523 U.S. 614, 621-22 (1998)); *Frady*, 456 U.S. at 167-68; *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). To establish "actual prejudice," The movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1977)(quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To demonstrate a miscarriage of justice, the movement must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).

A guilty plea further diminishes the scope of potential claims available under 2255. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." *United States v. Bundy,* 392 F.3d 641, 644 (4th Cir.2004). The "guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Thus, the defendant who has pled guilty "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea," *Bundy,* 392 F.3d at 644-45, or the government's "power to bring any indictment at all," *Broce,* 488 U.S. at 575, 109 S.Ct. 757; *see United States v. Bluso,* 519 F.2d 473, 474 (4th Cir.1975) ("A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities."); *see also Blackledge v. Perry,* 417 U.S. 21, 29-30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ("[W]hen a criminal defendant enters a guilty plea, he

may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited ... to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citations omitted)).

## C. Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. *See Strickland*, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were

9

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

Further, in evaluating a post-guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary. *See Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977). A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), *cert. denied*, 488 U.S. 843 (1988).

## IV. Discussion

### A. Claims Before the Plea Agreement

The petitioner claims that his counsel did not give or discuss with him a psychological report, discovery material, or the government's witness list. Furthermore, the petitioner claims that his counsel promised he would receive a specific sentence of probation if he pled guilty. These claims are founded on actions that occurred before the plea agreement. Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Missouri v. Frye* 132 S.Ct. 1399 (2012); see also *Padilla v. Kentucky*, 130 S.Ct. 1473, 1486 (2010). More specifically, during plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *McMann v. Richardson*, 397 U.S. 759, 771). In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Court held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."

The petitioner's claim that his lawyer did not discuss the psychological report with him is inconsistent with the fifty-five letters, phone calls and conferences which occurred with his lawyer during the course of his criminal proceeding. (*See* Doc. 12-1, pp. 2-12). It is also inconsistent with events noted on the Docket Sheet, including Motion to File Motions Outside Time Limits-due to forensic evaluation (Doc. 18); Motion to Continue Trial - due to psychological report (Doc. 20); Notice of Insanity Defense (Doc. 24); Notice of Intent to Introduce Expert Testimony in Support of Insanity Defense (Doc. 23); as well as a hearing on July 24, 2009, regarding a psychiatric exam and

11

a hearing on December 9, 2009, which was triggered by the forensic report. The record is inconsistent with the contention that counsel did not discuss a psychological report with the petitioner given the significant court activity on the issue of mental illness.

Moreover, on July 12, 2010, the petitioner filed a pro se motion in which he explained the results of the psychological evaluation, writing "This Defendant has been found competent, therefore is not a danger to society or himself." (Doc. 48, p. 4). Additionally, in a letter to Judge Bailey, the petitioner references the study at FMC Butner and its conclusion that he was competent. (Doc. 54). Therefore, it clear that the petitioner was aware that of the findings of the same psychological report he claims his lawyer did not discuss with him.

With respect to the plaintiff''s claim of inadequate counseling about discovery material and the government's witness list, the same are inconsistent with the transcript of the Change of Plea Hearing. During said hearing, the Court engaged the petitioner in the following colloquy:

> THE COURT: How many times would you say that you and Mr. Morgan, to the best of your recollection, got together and talked about your case?
>
> THE DEFENDANT: Several times.
>
> THE COURT: And during those occasions did you ask him questions, much like I'm asking you questions today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did he answer your questions?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you completely satisfied with the legal assistance, the advice, the counseling and the actions your attorney has taken in your behalf?
>
> THE DEFENDANT: Yes.
>
> A defendant's sworn representations made at a plea hearing "carry a strong presumption of

verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. *Bousely* 523 U.S. at 621-22. However, "in the absence of extraordinary circumstances...allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"

Given the fifty-five letters, phone calls and conferences between counsel and the petitioner that appear on the defense counsel's itemized bill (Doc. 112-1) and the attached affidavit of defense counsel[2], there is not clear and convincing evidence that the petitioner's statements made under oath at the Change of Plea Hearing were false. Rather, it would appear from the entirety of the record that defense counsel's performance fell within *Strickland's* "objective standard of reasonableness" measured by "prevailing professional norms."

Finally, the petitioner alleges that counsel promised he would receive probation if he entered a guilty plea pursuant to the plea agreement. Even if true, the undersigned finds the petitioner's argument unpersuasive. Several Courts of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Hughes v. United States*, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)); *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1027 (2007); *United States v. Foster*, 68 F.3d 86, 87-88 (4th Cir. 1995). Furthermore, it has been

---

[2]In his affidavit, counsel notes that he "had numerous meetings with Mr. Spaur both alone and with various assistants wherein we discussed in detail the government's evdence, strength of the case, possible defenses annd likelihood of prevailing at trial." (Doc.

noted that:

> [t]he sentencing consequences of guilty pleas (or for that matter guilty verdicts are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore,...a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

*Hughes* 2007 WL 841940 at *5, quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996).

### *B. Claims After the Plea Agreement*

#### **1. Presentence Report Claim**

The petitioner asserts that his counsel did not discuss the presentence report. However, the Court's previous findings preclude this claim. During sentencing, the Court specifically asked the petitioner if he had gone over the presentence report with his lawyer. Dkt. No. 124 at 3. In part of his response, the petitioner stated, "I never was able to set [sic] down with my lawyer and go over it." Id. However, his counsel immediately countered that statement. Id.. After hearing at length from the defendant, the Court concluded, "I will accept counsel's representation of having gone over the presentence investigation report." Id. At 5. Given this finding, an abuse of discretion standard applies. According to the record, there is no clear and convincing evidence that the District Court abused its discretion. As such, the petitioner's presentence report claim is without merit.

#### **2. Other Post-Guilty Plea Claims**

The petitioner makes three additional claims of ineffective assistance of counsel that occurred after the plea agreement. First, the petitioner asserts that his counsel was ineffective for failing to file a written motion for a Guideline downward departure based on diminished capacity. Second,

14

he asserts that his counsel failed to file a written objection to the presentence report's recommendation of an upward adjustment for creating a substantial risk of harm to human life and the environment. Third, he alleges that his counsel submitted fraudulent billings. Petitioner's claims do not demonstrate that he was wholly deprived of counsel. A review of the record establishes that these claims are without merit.

The government acknowledges that the petitioner's counsel did not file a motion seeking a downward departure based on diminished capacity. Dkt. No. 139 at 6. However, the petitioner has not shown clear and convincing evidence that the absence of the motion had any impact on his proceedings. In fact, the petitioner's counsel raised multiple objections to the presentence investigation report with regard to the petitioner's competency. Dkt. No. 124 at 8-10. The Court assured the petitioner and his counsel that these factors would be considered in sentencing. Id. Thus, the petitioner has failed to demonstrate that the proceedings would have been impacted if his counsel had moved for a downward departure.

In regard to substantial risk enhancement, the petitioner has similarly failed to provide clear or convincing evidence for his claim. During his sentencing, the petitioner claimed several times that he had not disposed of any chemicals. Id. at 16. He again raised this argument in his response to the respondent's motion to dismiss. Dkt. No. 141 at 4. This confuses the risk of harm with actual harm. As detailed in the presentence investigation report, the petitioner's storage of hazardous materials and methamphetamine clearly posed a substantial risk to not only the petitioner and his mother, but also anyone in the immediate vicinity. Dkt. No. 87 at 11-12. The petitioner has not provided any evidence to the contrary. In light of such circumstances, it would be unreasonable to demand the petitioner's counsel to object to the report's findings. Thus, the petitioner has failed to

establish his ineffective assistance of counsel claim regarding the enhancement.

Lastly, the petitioner has asserted that his counsel's bill for legal services provided is fraudulent due to the facts in grounds one through five. By making a claim for fraudulent billing against his counsel, the petitioner has failed to state a claim for which relief can be granted under § 2255. While this allegation might be appropriate for a malpractice claim, it can serve no function here. As such, it fails with the rest of the petitioner's claims.

In summary, petitioner's allegations are inconsistent with the record of his case. That results in petitioner not being able to meet his burden of proof with or without a hearing.

### V. Recommendation

For the reasons stated herein, it is accordingly recommended that the Court enter an Order **GRANTING** the respondent's Motion to Dismiss (Dckt. 140) and **DENYING WITH PREJUDICE**, the petitioner's § 2255 motion. It is further recommended that the petitioner's Motion to Appoint Counsel and Motion for Hearing (Dckt. 143) be **DENIED AS MOOT**.

Any party may file within fourteen (14) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner and the United States Attorney for the Northern District of West Virginia as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: July 31, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE